OPINION OF THE COURT
Louis C. Benza, J.
The State moves for summary judgment dismissing that portion of the claim that seeks damages on behalf of claimant’s two subcontractors, Warde Electric Contracting, Inc. (Warde) and Structural Concrete Corp. (Structural). The defendant asserts two grounds for dismissal: (1) Since there is no liquidating agreement between claimant and either of its subcontractors, the court lacks jurisdiction to hear the claim; and (2) claimant has no claim for the damages of its subcontractors since claimant has not suffered any of the damages.
On or about April 24, 1980, claimant entered into a highway construction/improvement contract with the defendant acting by and through its Department of Transportation (DOT) for improving intersections on various city streets in Region 8 in Orange County, New York. This claim, which was filed with the court on June 24, 1983, asserts two causes of action, pleaded in the alternative, on behalf of claimant and its two subcontractors, Warde and Structural.
Claimant’s former general manager, Allen R. Kobbe, was deposed on June 20, 1991. At the deposition, Kobbe testified that neither Structural nor Warde was ever paid by claimant for the claims being made against the State and that there are no written liquidating agreements between claimant and the two subcontractors.
The State asserts that since there is no contract between the State and either Warde or Structural, there is no privity of contract between them and, thus, there can be no breach of contract action asserted directly by either Warde or Structural against the State in this court unless there is a liquidating agreement between each of the subcontractors and claimant.
A liquidating agreement is an agreement between a contractor and its subcontractors through which the subcontractor, who has no privity with the owner, can assert a claim against *812 the owner. The liquidating agreement bridges the gap in privity between the subcontractor and the owner, allowing the general contractor to withdraw as an active participant (American Std. v New York City Tr. Auth., 133 AD2d 595; Lambert Houses Redevelopment Co. v HRH Equity Corp., 117 AD2d 227). Liquidating agreements have been uniformly upheld by the courts (Degnon Contr. Co. v City of New York, 235 NY 481; Lambert Houses Redevelopment Co. v HRH Equity Corp., supra; Ardsley Constr. Co. v Port of N. Y. Auth., 61 AD2d 953).
The State asserts that Kobbe, at his deposition, admitted that no liquidating agreement existed between claimant and its two subcontractors, thus the claims of the two subcontractors are not cognizable in this court.
However, upon a review of Kobbe’s disposition testimony, we find that he did not state there were no liquidating agreements. He stated that the liquidating agreements were verbal. The Assistant Attorney-General has not cited any decisional law, nor has the court been able to locate any case law, that requires that a liquidating agreement be in writing. The court has also reviewed General Obligations Law § 5-701, which sets forth the types of contracts which must be in writing. The provisions of General Obligations Law § 5-701 do not apply to liquidating agreements. "Courts have stressed that the ’Statute of Frauds, which was designed to guard against fraudulent claims supported by perjured testimony, was never meant to be used as "a means of evading just obligations” based on contracts "fairly, and admittedly, made” ’ ” (Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 23A; General Obligations Law § 5-701, at 281). Here, neither claimant nor its subcontractors, the parties which allegedly entered into the agreements, have come forward to question the existence of the agreements. In fact, Kobbe testified at the deposition that claimant and its subcontractors have agreements whereby the claimant will pay over to the subcontractors any sum recovered from the State. A liquidating agreement between a contractor and a subcontractor with respect to any recovery from the defendant affects only the relationship between the contractor and the subcontractor and should not be available to the defendant as a shield against liability for breach of contract (Ardsley Constr. Co. v Port of N. Y. Auth., 61 AD2d 953, supra). Although not specifically stated on the law, verbal liquidating agreements *813 have been upheld in this court (see, Elderlee, Inc. v State of New York, claim No. 66176, filed June 30,1988, Hanifin, J.).
As defendant has failed to establish that no liquidating agreements exist, the State’s motion to dismiss the subcontractors’ claims on this basis must be and is hereby denied.
The State also asserts that since claimant has not paid Structural and Warde for the claims presented on their behalf, claimant has not suffered any damages and cannot sustain a cause of action against the State. Where a liquidating agreement exists, there is no requirement that the contractor must have directly suffered a loss prior to the institution of a suit against the owner (American Std. v New York City Tr. Auth., 133 AD2d 595, supra; Lambert Houses Redevelopment Co. v HRH Equity Corp., 117 AD2d 227, supra; Ardsley Constr. Co. v Port of N. Y. Auth., 61 AD2d 953, supra). Thus, the State’s motion to dismiss on the basis of prematurity is also denied.
We now turn to a collateral issue which was raised by the State in its reply papers.
This motion was originally scheduled to be heard February 26, 1992. The State personally served its motion papers upon claimant’s counsel on February 13, 1992, 13 days prior to the return date. In the notice of motion, the State invokes CPLR 2214 (b), which requires that answering papers be served 7 days before the return date if the motion is served at least 12 days prior to the return date. Claimant, without objection from defendant, sought and was granted an adjournment of the return date to March 4,1992, mailed his answering papers to the State on February 29, 1992, less than 7 days prior to the return date. The State asserts that (1) the court should not consider claimant’s answering papers since claimant has failed to show good cause why these answering papers were late, and (2) that claimant has not shown good cause to support its planned submission of recently executed written liquidating agreements on the motion’s return date. These agreements, both executed on February 28, 1992, were received by the court on March 4, 1992 and specifically state that the parties are reducing to writing their previously agreed-to verbal liquidation agreements.
CPLR 2214 (c) specifically provides that "[o]nly papers served in accordance with the provisions of this rule shall be read in support of, or in opposition to, the motion unless the court for good cause shall otherwise direct.” Similarly, CPLR *814 2004, relating to extensions of time, requires that good cause be shown before a party is allowed to tardily submit papers (Wallin v Wallin, 34 AD2d 870; Henderson v Stilwell, 116 AD2d 861). Here, claimant has failed to offer an excuse for the tardy service of its answering papers and, because of such failure, under usual circumstances, the court would not consider them. However, defendant was able to timely respond to the arguments raised in claimant’s answering affidavit and, thus, the State will not be prejudiced by the fact that the court has reviewed claimant’s counsel’s affidavit as we have also considered the State’s reply papers. Since the written liquidation agreements are only the memorialization of already existing verbal agreements, we, also, do not see any prejudice to the State in the tardy submission of these agreements. We have not, however, relied on the written agreements in reaching our determination of this motion.
Based on the foregoing, the State’s motion to dismiss that portion of the claim relating to the subcontractors, Warde and Structural, is denied.